1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   THEODORE WILLIS,

11              Petitioner,                    No. CIV S-10-0642 MCE EFB P

12        vs.

13   R. GROUNDS,

14              Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16        Petitioner is a state prisoner proceeding without counsel on a petition for a writ of habeas

17   corpus.  *See* 28 U.S.C. § 2254.  Respondent moves to dismiss the petition on the grounds that it

18   fails to state a cognizable claim.  For the reasons that follow, the motion to dismiss should be

19   denied.

20   **I.     Background**

21        Petitioner is serving an indeterminate life term.  Pet. at 2, 8.[1]  He challenges a 2008

22   disciplinary action taken against him for allegedly having contraband (weapons and a cell phone)

23   in his cell.  *Id.* at 8.  Petitioner was found guilty of possession of a deadly weapon, was assessed

24   a SHU term, lost 360 days of good time credits, lost his privilege group status and was placed in

25   _____

26        [1] The page numbers cited herein are those assigned by the court's electronic docketing
     system and not those assigned by the parties.

                                         1

a different level of custody.  *Id.* at 15, 16.  Petitioner alleges that the contraband belonged to his cellmate and he had no knowledge of it, that he was deprived of due process at the disciplinary hearing when he was not allowed to call witnesses, that staff falsified evidence against him, and that the evidence against him "is so slim as to be nonexistent."  *Id.* at 9, 18, 21.

Petitioner alleges that because he has been found guilty of possessing a weapon and a cell phone, there is a "very strong likelihood" that he will be denied parole at his next hearing, whereas "absent the guilty finding, petitioner stood an excellent chance of receiving a parole date, after 30 years of incarceration." *Id.* at 16.  He states that his chance to parole depends heavily on his conduct, and that he "had maintained an exemplary record of conduct and reform since receiving his last disciplinary violation . . . more than 18 years" ago.  *Id.* at 14.

He further alleges that his loss of night yard, weekend and holiday yard, and night dayroom, and his loss of the right to pursue his vocation (which is needed in order to be found suitable for parole), show that he has been denied a liberty interest.  *Id.* at 17.

## II.    Respondent's Motion to Dismiss

Respondent moves to dismiss the petition pursuant to Rule 4 of the Rules Governing § 2254 Cases in the U.S. District Courts for failure to state a cognizable claim.  This court has authority under Rule 4 to dismiss a petition if it "plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . . ."  As a corollary to that rule, the court may also consider a respondent's motion to dismiss, filed in lieu of an answer, on the same grounds.  *See, e.g., O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate a motion to dismiss for failure to exhaust state remedies); *White v. Lewis*, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as the procedural vehicle to review a motion to dismiss for state procedural default).  Respondent argues that petitioner's claim is not cognizable in a habeas petition because petitioner has not established that issuance of the writ (i.e. ordering that the disciplinary conviction be expunged) would necessarily shorten the duration of his confinement.

1        "Federal law opens two main avenues to relief on complaints related to imprisonment:  a

2    petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of

3    1871, Rev Stat § 1979, as amended, 42 U.S.C. § 1983.  Challenges to the validity of any

4    confinement or to particulars affecting its duration are the province of habeas corpus . . .;

5    requests for relief turning on circumstances of confinement may be presented in a § 1983

6    action."  *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (citing *Preiser v. Rodriguez*, 411 U.S.

7    475, 500 (1973)).  While not expressly framed as such, respondent's argument is a jurisdictional

8    one – respondent claims that success on the petition will not impact petitioner's custody and thus

9    the court is without power to hear the case under the habeas statute.  *See Docken v. Chase,* 393

10   F.3d 1024, 1028-29 (9th Cir. 2004) (treating the issues of whether a claim that could potentially

11   impact the duration of custody was cognizable or was within the court's federal habeas

12   jurisdiction as interchangeable).  Because the question presented on the motion necessarily calls

13   into question the court's subject matter jurisdiction, analysis of the motion must begin with the

14   fundamental threshold question of whether there is jurisdiction to hear petitioner's claim.

15        The party seeking to invoke the jurisdiction of a federal court bears the initial burden of

16   pleading facts sufficient to establish jurisdiction.  *McNutt v. Gen'l Motors Acceptance Corp.*,

17   298 U.S. 178, 182 (1936); *Jackson v. Cal. Dep't of Mental Health*, 399 F.3d 1069, 1074 (9th Cir.

18   2005); *United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir. 1994).  Thus, the court must

19   determine whether petitioner has alleged sufficient facts in the petition to show that the

20   challenged actions impacted his custody in a manner sufficient to invoke the court's jurisdiction

21   under the habeas statute.

22        Generally, a prisoner challenging a disciplinary action with an attendant loss of time

23   credits must pursue the challenge in a habeas petition, because a decision in the case in the

24   prisoner's favor would require restoration of the lost time credits and would therefore accelerate

25   the inmate's date of release, making the case the type of "core" habeas challenge that must be

26   pursued by habeas petition.  *Preiser*, 411 U.S. at 487-88, 490.  Here, however, petitioner is a

1    life-term inmate who passed his Minimum Eligible Parole Date ("MEPD") in 2005.  Dckt. No. 1

2    at 45.[2]  Respondent argues that because petitioner has passed his MEPD, the loss of credits will

3    not "necessarily spell speedier release" and that therefore the petition is not cognizable in

4    habeas.  Dckt. No. 11 at 4.

5         Petitioner has been sentenced to life for murder, so the California Code of Regulations,

6    Title 15, Article 11 (Parole Consideration Criteria and Guidelines for Murders Committed on or

7    After November 8, 1978) applies.  *See* Dckt. No. 1 at 1.  This statute explains that an inmate's

8    MEPD is established by statute, and may be reduced by "good conduct" credits.  Cal. Code

9    Regs. tit. 15, § 2400.  Inmates receive their initial parole hearing one year before the MEPD, and

10   they continue to receive parole hearings until they are found suitable for parole.  Cal. Penal Code

11   § 3041(a).  One factor "tending to show unsuitability" for parole is "[t]he prisoner has engaged

12   in serious misconduct in prison or jail."  Cal. Code Regs. tit. 15, § 2402(c)(6).

13        Once an inmate has been found suitable for parole, the Board of Prison Terms determines

14   the length of time a prisoner must serve prior to actual release on parole by setting a base term

15   and then adjusting the term by accounting for aggravating or mitigating circumstances.  *Id.* at

16   § 2400, 2403-2409.  Next, the Board determines the amount of "postconviction" credit an inmate

17   should be granted, which reduces the length of time the inmate must serve.  *Id.* at §§ 2403, 2410.

18   In determining the amount of postconviction credit, the Board "shall" consider the inmate's

19   behavior in prison.  *Id.* at § 2410(c)(3).  The regulations state that *no* postconviction credit "shall

20   be granted in the case of any prisoner who commits serious . . . infractions of departmental

21   regulations, violates any state law, or engages in other conduct which could result in rescission

22   of a parole date (see Section 2451) unless the panel finds evidence in mitigation and supports

23   such finding with a statement of its reasoning."  *Id.* at § 2410(d).  Section 2451 specifically

24   provides that "possession of a weapon without permission" and "possession of escape tools

25   _____

26       [2] This exhibit to the petition is an institutional classification committee record that states
     that petitioner's MEPD is 6/14/05.

4

1    without permission" are examples of conduct that may result in the rescission proceedings.

2          Respondent seems to argue that because petitioner had already passed his MEPD at the

3    time of the disciplinary proceeding, the 360-day credit loss that he was assessed will not affect

4    when he is released from prison.  Dckt. No. 11 at 4.  But petitioner argues that his 360 days of

5    credit loss "will be assessed once he receives a parole date."  Dckt. No. 1 at 15.

6          It appears that there are two possible ways that the disciplinary conviction may affect the

7    length of petitioner's sentence.  First, the Parole Board may find (possibly at multiple hearings)

8    that petitioner is unsuitable for parole because of the disciplinary conviction.  Second, if the

9    Board eventually does find petitioner suitable for parole, the disciplinary conviction will likely

10   prevent petitioner from receiving his postconviction credits, and the duration of his confinement

11   will be lengthened.  Thus, to rule on respondent's motion to dismiss, the court must determine

12   whether federal habeas jurisdiction exists in an action where a petitioner challenges prison

13   discipline that will potentially or likely, but not definitely, impact the duration of his

14   confinement.

15         Courts within the Ninth Circuit have not responded uniformly to this issue.  *Compare,*

16   *e.g., Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989) ("Habeas corpus jurisdiction . . .

17   exists when a petitioner seeks expungement of a disciplinary finding from his record if

18   expungement is likely to accelerate the prisoner's eligibility for parole."); *Hardney v. Carey*, No.

19   CIV S-06-0300 LKK EFB P, 2011 U.S. Dist. LEXIS 35603, at *18-22 (E.D. Cal. Mar. 31, 2011)

20   (recommending that the district court find that a challenge to a disciplinary conviction carrying

21   no credit loss was cognizable in habeas because of its likely impact on parole eligibility, adopted

22   in full by district court order dated June 6, 2011); *Johnson v. Swarthout*, No. CIV S-10-1568

23   KJM DAD P, 2011 U.S. Dist. LEXIS 43798, at *4-8 (E.D. Cal. Apr. 22, 2011) (same); and *Silva*

24   *v. Cal. Dep't of Corr.*, No. CIV S-03-1508 DFL GGH P, 2005 U.S. Dist. LEXIS 32046, at *2-3

25   (E.D. Cal. Dec. 9, 2005) (same, adopted in full by 2006 U.S. Dist. LEXIS 3661 (E.D. Cal. Jan.

26   31, 2006)) with *Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003) (stating that "habeas

5

1  jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison

2  condition will not necessarily shorten the prisoner's sentence."); *Everett v. Yates*, No. CIV F-

3  11-00150 AWI GSA HC, 2011 U.S. Dist. LEXIS 23224, at *2-5 (E.D. Cal. Mar. 8, 2011)

4  (recommending the dismissal of a habeas petition challenging a disciplinary conviction with no

5  attendant credit loss, because the potential impact of the conviction on the petitioner's parole

6  prospects was "entirely speculative"); and *Perrotte v. Salazar*, No. ED CV 06-00539-JOHN

7  (VBK), 2010 U.S. Dist. LEXIS 140385, at *9-16 (C.D. Cal. Nov. 8, 2010) (same, adopted in full

8  by 2011 U.S. Dist. LEXIS 6606 (C.D. Cal. Jan 24, 2011)).[3]  As is apparent from these cases,

9  courts within this circuit have varied when addressing habeas challenges to prison disciplinary

10  decisions that would have an impact on the duration of confinement only to the extent that they

11  may affect the petitioners' parole eligibility.  A brief discussion of the apparent source of the

12  disagreement and the various approaches courts have taken is appropriate.

13       Three Ninth Circuit cases are central to the controversy:  *Bostic v. Carlson*, 884 F.2d

14  1267 (9th Cir. 1989), *Ramirez v. Galaza*, 334 F.3d 850 (9th Cir. 2003), and *Docken v. Chase*,

15  393 F.3d 1024 (9th Cir. 2004).  In *Bostic*, the court of appeals reviewed district court dismissals

16

---

17       [3] Unsurprisingly, courts have also disagreed as to whether a life-term prisoner past his
18  MEPD may challenge a disciplinary conviction in a habeas petition for the same reasons that
   they have disagreed as to whether prisoners in general may challenge disciplinary findings with
19  no attendant loss of time credits in a habeas petition.  *Compare Calderon-Silva v. Uribe*, No.
   SACV 09-832 MMM(JC), 2010 U.S. Dist. LEXIS 138292, at *4-8 (C.D. Cal. Aug. 31, 2010)
20  (recommending dismissal of a habeas petition in which a life-term prisoner challenged a
   disciplinary conviction because restoration of the lost credits would not advance the petitioner's
21  parole date and "the mere possibility that the . . . disciplinary conviction could be detrimental to
   petitioner in future parole hearings is too speculative to serve as the basis for a habeas corpus
22  petition," adopted in full by 2010 U.S. Dist. LEXIS 138310 (C.D. Cal. Dec. 21, 2010) *and*
   *Thomas v. Wong*, No. C 09-0733 JSW (PR), 2010 U.S. Dist. LEXIS 39748, at *3-10 (N.D. Cal.
23  Mar. 26, 2010) (dismissing a habeas petition in which a life-term prisoner challenged a
   disciplinary finding because the credit loss imposed could not increase petitioner's minimum or
24  maximum prison terms) *with Oberpriller v. Grounds*, No. C 09-5531 CRB (PR), 2010 U.S. Dist.
   LEXIS 123998, at *1-4 (N.D. Cal. July 14, 2010) (rejecting respondent's argument that the
25  petition of a post-MEPD life-term inmate challenging a serious disciplinary finding was not
   cognizable, because the serious disciplinary finding constituted "an obstacle to a favorable
26  parole decision" and thus its expungement would likely accelerate the petitioner's parole
   eligibility).

of ten separate habeas petitions filed by the same petitioner, challenging nine prison disciplinary actions taken against him.  884 F.2d at 1269.  Prison officials had assessed a forfeiture of good-time credits for some of the infractions, but the remainder did not carry a loss of time credits – only a term of segregated housing.  *Id.* at 1269.  In each of the petitions, the petitioner sought expungement of the infractions from his disciplinary record.  *Id.*  The court "assume[d]" that habeas jurisdiction existed over all the petitions, even those challenging discipline with no attendant credit loss, stating:

> Habeas corpus jurisdiction is available under 28 U.S.C. § 2241 for a prisoner's claim that he has been denied good time credits without due process of law. [citations] Habeas corpus jurisdiction is also available for a prisoner's claims that he has been subjected to greater restriction of his liberty, such as disciplinary segregation, without due process of law.[4] [citations] Habeas corpus jurisdiction also exists when a petitioner seeks expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole. [*McCollum v. Miller*, 695 F.2d 1044, 1047 (7th Cir. 1982)].

*Id.* at 1269 (emphasis added).  The court did not elaborate on when expungement would be "likely to accelerate" parole-eligibility.[5]

---

[4] This statement has been undercut by the Supreme Court's indication in *Muhammad* that claims that do not in any way implicate the fact or duration of confinement are not cognizable under the federal habeas statutes.  *See* 540 U.S. at 754-55 (stating that the plaintiff, who brought a retaliation claim against a prison official, had raised no claim on which habeas relief could have been granted on any recognized theory); *see also Crawford*, 599 F.2d at 891 ("[T]he writ of habeas corpus is limited to attacks upon the legality or duration of confinement.").  Further, placement in administrative segregation does not give rise to an actionable claim under the Due Process Clause unless the segregated housing presents a "dramatic departure from the basic conditions of [the inmate's] sentence."  *Sandin v. Conner*, 515 U.S. 472, 485 (1995); *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

[5] *Bostic* spoke of "eligibility" for parole.  In California, release on parole is a two-step process – first, the prisoner must become "eligible" to be *considered* for parole (sometimes referred to simply as "eligibility") and, second, the prisoner must be found "eligible" to be *released* on parole (sometimes referred to simply as "suitability").  *See Neal v. Shimoda*, 131 F.3d 818, 824 (9th Cir. 1997) (highlighting this distinction for purposes of § 1983 challenge to Hawaii's Sex Offender Treatment Program).  It is unclear whether the *Bostic* panel's jurisdictional pronouncement was limited to claims likely to accelerate eligibility for consideration or covered both those claims and claims likely to accelerate eligibility for release, as both concepts can be covered broadly by the term "eligibility" and courts often do not distinguish between the two steps.  *See* The Free Merriam-Webster Dictionary entry for "eligible," http://www.merriam-webster.com/dictionary/eligible (last checked July 5, 2011)

1    The court revisited *Bostic*'s statements on habeas jurisdiction in *Ramirez*.  334 F.3d at

2   858-59.  In *Ramirez*, a prisoner brought a civil rights action under § 1983 rather than a habeas

3   petition to challenge the procedures used in imposing disciplinary sanctions of ten days of

4   disciplinary detention, 60 days loss of privileges (but no loss of time credits), and a referral to

5   administrative segregation.  *Id.* at 852-53.  He sought expungement of the disciplinary record

6   from his file and an injunction prohibiting the state from considering it "when they fix plaintiff's

7   terms and decide whether plaintiff should be released on parole."  *Id.* at 859 n.6.  The district

8   court dismissed the case, finding it barred by *Heck*'s favorable termination rule after determining

9   that success in the case would necessarily imply that the disciplinary finding was invalid.  *Id.* at

10   852; *see supra* n.2.

11    The Court of Appeals reversed, holding that the favorable termination rule does not apply

12   to prison disciplinary sanctions that do not necessarily affect the fact or length of a prisoner's

13   confinement.  *Id.* at 854-58; *see supra* n.2.  The court rejected the state's *Bostic*-based argument

14   that the plaintiff's claim that his disciplinary hearing violated due process was "logically

15   inseparable from an attack on the outcome of that hearing, and that a judgment in his favor

16   would necessarily imply the invalidity of his disciplinary conviction."  *Id.* at 859.  The court

17   reasoned that the favorable termination rule applies only if success in the § 1983 action would

18   necessarily imply the invalidity of a disciplinary finding and necessitate a reduction in the

19   plaintiff's length of confinement.  *Id.*  The state had failed to show that expungement of the

20   disciplinary finding would necessarily accelerate the plaintiff's release, because the parole board

21

22   (defining "eligible" as "qualified to participate or to be chosen" and "worthy of being chosen").
23   The undersigned assumes, absent definitive indication to the contrary, that the court intended
     that habeas jurisdiction exists both when success on the claim is likely to accelerate the date on
24   which the petitioner becomes eligible for parole consideration as well as when success on the
     claim is likely to accelerate the date on which the petitioner will ultimately be found suitable for
25   release on parole.  This assumption is consistent with the underlying purpose of the writ of
     habeas corpus, which is concerned with the petitioner's ultimate release.  So long as success on
26   the claim is likely to accelerate release under *Bostic*, the court sees no reason to distinguish
     between "eligibility" and "suitability."

1  could still deny parole on the basis of other factors.  *Id.* ("As Ramirez's suit does not threaten to

2  advance his parole date, his challenge to his disciplinary hearing is properly brought under §

3  1983.").

4          In the course of its analysis, the court discussed *Bostic* in some detail:

5          Bostic does not hold that habeas corpus jurisdiction is always available to seek
           the expungement of a prison disciplinary record.  Instead, a writ of habeas corpus
6          is proper only where expungement is "likely to accelerate the prisoner's eligibility
           for parole."  Bostic, 884 F.2d at 1269 (emphasis added). . . .  Bostic thus holds
7          that the likelihood of the effect on the overall length of the prisoner's sentence
           from a successful § 1983 action determines the availability of habeas corpus."

8

9  *Id.* at 858.  From this, the court made the following leap, assuming that the courts' jurisdiction

10 over habeas petitions and their jurisdiction over § 1983 actions are mutually exclusive:

11 "[H]abeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a

12 prison condition will not necessarily shorten the prisoner's sentence."  *Id.* at 859 (emphasis

13 added).  For ease of discussion, this quote will be referred to herein as the "mutual exclusivity

14 rule."  This language has created uncertainty, because challenges to prison conditions that will

15 necessarily shorten the prisoner's sentence fall squarely within the "core" of habeas jurisdiction

16 identified in *Preiser*, and the *Ramirez* language indicates that only "core" habeas cases can be

17 brought in federal habeas petitions.  It is important to recall that *Preiser* simply held that "core"

18 cases had to be brought in habeas petitions but did not hold that habeas jurisdiction was limited

19 to such cases.  However, *Bostic* – quoted with apparent approval by the *Ramirez* panel – squarely

20 found habeas jurisdiction to exist in a non-"core" situation, where success would not necessarily

21 spell earlier release, but was merely likely to accelerate parole-eligibility.  Thus, *Ramirez*'s

22 mutual exclusivity rule quoted above appears inconsistent both with the opinion's prior reliance

23 on *Bostic* for the proposition that "the likelihood of the effect on the overall length of the

24 prisoner's sentence from a successful § 1983 action determines the availability of habeas corpus"

25 and with *Bostic* itself.

26 ////

1    One year after *Ramirez*, the court again visited the intersection of habeas and § 1983 in

2    *Docken*.  393 F.3d at 1026-31.  In *Docken*, as in *Bostic*, the court reviewed the dismissal of a

3    habeas petition for want of jurisdiction.  *Id.* at 1025, 1026.  Unlike *Bostic*, the petitioner in

4    *Docken* did not challenge a prison disciplinary finding, but rather the timing of his

5    parole-eligibility reviews.  *Id.* at 1025-26.  The district court had concluded that the claim could

6    only be brought under § 1983 rather than habeas, because the plaintiff's success in the case

7    would not "entitle" him to release, just an earlier eligibility review.  *Id.*

8    In reversing that conclusion, the Court of Appeals discussed at length U.S. Supreme

9    Court and Ninth Circuit precedent.  The first conclusion the court drew from that precedent was

10   that, "although Supreme Court law makes clear that § 1983 is not available where a prisoner's

11   claim 'necessarily' implicates the validity or duration of confinement, it does not set out any

12   mirror-image limitation on habeas jurisdiction."  *Id.* at 1028.  The court, citing *Bostic*, noted that

13   its own precedent held that habeas jurisdiction was available in some non-"core" circumstances.

14   *See id.* ("In [*Bostic*], for example, we held that 'habeas corpus jurisdiction . . . exists when a

15   petitioner seeks expungement of a disciplinary finding from his record if expungement is likely

16   to accelerate the prisoner's eligibility for parole.'").

17          Importantly, in speaking of claims only "likely to accelerate" eligibility for
              parole, Bostic defined a class of suits outside the "core" habeas claims identified
18            in *Preiser*.  Success on the merits in such cases would not "necessarily" implicate
              the fact or duration of confinement.  Instead, such claims have, at best, only a
19            possible relationship to the duration of a prisoner's confinement, as eligibility for
              parole is distinct from entitlement for parole.
20

21   *Id.* at 1028-29.  Thus, the court recognized that, under *Bostic*, habeas jurisdiction was proper

22   even where success on the claim would not necessarily shorten the plaintiff's sentence – a view

23   of habeas jurisdiction squarely at odds with the mutual exclusivity rule announced in *Ramirez*.

24   In fact, the *Docken* court went further than *Bostic*, finding cognizable not only those challenges

25   that, if successful, were "likely to accelerate" release, but also those that, if successful, "*could*

26   *potentially* affect the duration of . . . confinement."  *Id.* at 1031 (emphasis added).

1    Unfortunately, the *Docken* panel did not expressly resolve the inconsistency between

2    *Bostic* and *Ramirez*.  It did attempt to distinguish *Ramirez*'s mutual exclusivity rule in a footnote

3    by stating that it was limited to the circumstances presented in that case, where the prisoner

4    challenged "internal disciplinary procedures" and consequent administrative segregation that did

5    not "deal with the fact or duration of his confinement."  *Id.* at 1030 n.4.  A close reading of

6    *Ramirez* reveals that the case cannot be distinguished from *Bostic* on those grounds, however.

7    As in *Ramirez*, the petitioner in *Bostic* challenged at least one prison disciplinary action that

8    resulted in administrative segregation but no loss of time credits.  Importantly, in both cases, the

9    prisoners sought expungement of a disciplinary finding from their records, and the prisoner in

10   *Ramirez* specifically argued that the challenged disciplinary findings would have an adverse

11   impact on his parole eligibility.  *Ramirez*, 334 F.3d at 859 n.6; *Bostic*, 884 F.2d at 1269.  Thus,

12   both cases "deal[t] with the fact or duration of confinement" in the same manner.

13   Here, this court must decide whether to follow *Ramirez*'s mutual exclusivity rule or the

14   approach of *Bostic* and *Docken*.  Some district courts that have taken the latter route have

15   reasoned that *Ramirez*'s mutual exclusivity rule was dictum and thus not binding.  *E.g.*, *Foster v.*

16   *Washington-Adduci*, No. CV 09-07987-PSG (DTB), 2010 U.S. Dist. LEXIS 41578, at *12 (C.D.

17   Cal. Mar. 24, 2010); *Hickey v. Adler*, No. 1:08-cv-00826-JMD-HC, 2009 U.S. Dist. LEXIS

18   67064, at *6 n.4 (E.D. Cal. July 27, 2009); *Dutra v. Cal. Dep't of Corr. & Rehab.*, No. C

19   06-0323 MHP, 2007 U.S. Dist. LEXIS 82377, at *16-17 (N.D. Cal. Nov. 6, 2007); *Drake v.*

20   *Felker*, No. 2:07-cv-00577 (JKS), 2007 WL 4404432, at *2 (E.D. Cal. Dec. 13, 2007).  The

21   undersigned agrees with that reasoning.  The mutual exclusivity rule was not essential to the

22   holding in *Ramirez*, which held simply that *Heck*'s favorable termination rule does not apply to

23   § 1983 cases where success in the action would not necessitate earlier release.  That holding is

24   not contrary to, and may coexist beside, *Docken*'s conclusion that § 1983 and habeas are not

25   mutually exclusive but instead may both be available to prisoners in some instances, specifically

26   in those challenges that implicate the duration of confinement but would not necessarily, if

1   successful, result in speedier release.[6]

2          Accordingly, the court finds that, under *Bostic* and *Docken*, habeas jurisdiction exists

3   over the instant petition, because expungement of the disciplinary action challenged by petitioner

4   could potentially accelerate petitioner's release.  Petitioner alleges that because he has been

5   found guilty of possessing a weapon and a cell phone, there is a "very strong likelihood" that he

6   will be denied parole at his next hearing, whereas "absent the guilty finding, petitioner stood an

7   excellent chance of receiving a parole date, after 30 years of incarceration."  Dckt. No. 1 at 16.

8   He alleges that his chance to parole depends heavily on his conduct, and that he "had maintained

9   an exemplary record of conduct and reform since receiving his last disciplinary violation . . .

10  more than 18 years" ago.  *Id.* at 14.  That assertion is expressly bourne out by the regulations

11  governing parole.

12         The Board is statutorily obligated to consider petitioner's conduct while incarcerated as a

13  factor in deciding parole suitability.  One factor "tending to show unsuitability" for parole is

14  whether  "[t]he prisoner has engaged in serious misconduct in prison or jail."  Cal. Code Regs.

15  tit. 15, § 2402(c)(6).  Petitioner has been found guilty of possessing weapons and a cellphone;

16  expungement of this finding could potentially accelerate his release, especially since he had been

17  disciplinary-free for the previous 18 years.  Indeed, the seriousness of these two offenses makes

18  it probable that failure to expunge the finding would result in petitioner serving a longer period

19  of incarceration because of the affect on parole consideration.

20         In addition, assuming that the Board eventually finds petitioner suitable for parole, the

21  disciplinary finding will very likely impact the length of time petitioner serves for the further

22  reason that he will not be granted postconviction credit.  *See id.* at §§ 2410(c)(3), 2410(d), 2451

23

24         [6]  Additionally, even if *Ramirez*'s mutual exclusivity pronouncement was essential to its
    holding, its weight appears to be undermined by *Bostic*'s earlier ruling to the contrary.  *See*
25  *Barapind v. Enomoto*, 400 F.3d 744, 750-51 (9th Cir. 2005) (en banc) (per curiam) (noting that
    rulings by three-judge panels are "law of the circuit," and are binding on subsequent three-judge
26  panels).

1   (the Board shall not grant postconviction credit if an inmate has been found guilty of possessing

2   a weapon or escape tools "unless the panel finds evidence in mitigation and supports such

3   finding with a statement of its reasoning").  Because the court finds that expungement of the

4   disciplinary conviction not only could potentially accelerate petitioner's release, but likely will

5   do so, habeas jurisdiction exists.[7]

6   **IV.    Mootness**

7          Although petitioner's claims are within the jurisdiction of the habeas statute for the

8   reasons just discussed, the court must also examine whether that petitioner's claims are

9   nevertheless moot and are thus outside the court's jurisdiction under Article III of the U.S.

10  Constitution.  Under Article III, § 2, a federal court's jurisdiction is limited to those cases which

11  present "cases-or-controversies."  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).  In habeas actions,

12  the case-or-controversy requirement mandates that a petitioner must have suffered, or be

13  threatened with, an actual injury traceable to the respondent and redressable by issuance of the

14  writ.  *See id.*  Respondent does not argue that petitioner's claims are moot, but federal courts

15  "have an independent duty to consider" mootness sua sponte.  *Demery v. Arpaio*, 378 F.3d 1020,

16  1025 (9th Cir. 2004).  Like jurisdiction under the habeas statute, it is petitioner's obligation to

17  allege facts sufficient to show that his claim is within the court's power under Article III.

18  *Jackson*, 399 F.3d at 1074.

19         In general, a habeas petition challenging a prison disciplinary action no longer presents

20  such a case or controversy, and therefore becomes moot, when the punishment for the action has

21  been withdrawn or completed at the time of the petition.  *See Wilson v. Terhune*, 319 F.3d 477,

22  479, 481-82 (9th Cir. 2003).  Where the petitioner can show that so-called "collateral

23  consequences" flow from the disciplinary action (i.e., circumstances beyond the punishment

24  imposed that constitute an actual injury), however, the case remains justiciable.  *Id.* at 479-80;

25  _____

26         [7] The court does not rule on petitioner's argument that his loss of privileges constitute a
    denial of his liberty interests.

1   *see Spencer*, 523 U.S. at 14-16.  This court must therefore determine whether petitioner has

2   alleged facts showing that the disciplinary sanctions against him have not yet been completed or

3   that collateral consequences of the disciplinary action cause his case to remain live.

4          Here, petitioner alleges that at the time the petition was filed, he was at a more favorable

5   level of custody, and had lost night yard, weekend and holiday yard, and night dayroom

6   privileges, and had lost his right to work.  Dckt. No. 1 at 17.  These allegations are sufficient to

7   show that, at this stage of the proceedings, petitioner's case is not moot because the disciplinary

8   sanctions against him have not yet been completed.  Therefore, the court need not decide address

9   the collateral consequences doctrine because the disciplinary finding may be used against

10   petitioner in future parole proceedings.[8]

11   _____

12          [8] A brief summary of the relevant authorities regarding whether potential impact on
     parole-eligibility constitutes a collateral consequence follows.  In *Spencer v. Kemna*, the
13   Supreme Court considered whether an order revoking parole carried collateral consequences.
     523 U.S. at 14-16.  The petitioner in *Spencer* argued that the order could be used against him in a
14   future parole proceeding.  *Id.* at 14.  The Court found this possibility insufficient to be
     considered a collateral consequence, however, because, the potential use of the parole revocation
15   order in a future parole suitability hearing was merely "a possibility rather than a certainty or
     even a probability."  *Id.*  This was so, the court concluded, because under state law, the order
16   would be only one factor among many to be considered by the parole authority in a future parole
     proceeding, and the parole authority had almost unlimited discretion to determine suitability.  *Id.*

17          In *Wilson v. Terhune*, the petitioner argued that a prison disciplinary finding (based on an
     escape attempt) would adversely affect his future parole prospects.  319 F.3d at 482.  The Ninth
18   Circuit similarly concluded that such a possibility did not constitute a collateral consequence,
     because "the decision to grant parole is discretionary" and the disciplinary finding would be only
19   one factor among many considered by the BPH.  *Id.*; *see also Carranza v. Gomez*, 221 Fed.
     Appx. 582, 583 (9th Cir. 2007) (characterizing *Wilson* as holding that "impaired parole prospects
20   do not constitute collateral consequences.").  The court also noted that the BPH would likely
     consider the underlying conduct, which the petitioner did not deny, rather than the disciplinary
21   finding itself, so expunging the disciplinary conviction would not improve his parole prospects.
     *Wilson*, 319 F.3d at 482.
22          Here, unlike *Wilson*, petitioner denies the charges underlying his disciplinary finding.  It
     is therefore possible that expungement of the finding from his record would improve his parole
23   prospects to the extent that the discipline, and the conduct underlying it, would no longer be
     considered by the BPH or by petitioner's evaluating psychologists.  This is especially likely in a
24   case such as this one, where petitioner alleges that he had remained disciplinary-free for eighteen
     years before this disciplinary conviction.  At the same time, the discipline remains but one
25   consideration among many reviewed by the BPH and the Governor in deciding petitioner's
     parole suitability.  The undersigned takes no position on whether the potential use of the
26   disciplinary conviction in future parole proceedings is too speculative to be considered a

**V.      Conclusion**

Accordingly, it is hereby RECOMMENDED that respondent's motion to dismiss be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 31, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

collateral consequence. *Compare Maxwell v. Neotti*, No. 09cv2660-L (BLM), 2010 U.S. Dist. LEXIS 88062, *18-25 (S.D. Cal. July 15, 2010) (finding a habeas challenge to a disciplinary conviction with no attendant credit loss cognizable in habeas but nonetheless moot because the BPH had "complete discretion in determining whether, and to what extent" to consider the rules violation in determining parole eligibility, making it "no more than a possibility that the conviction would impact Petitioner's parole eligibility, thereby rendering this potential consequence too speculative to satisfy Article III's 'injury in fact' requirement.") *with Noor v. Martel*, No. CIV. 08-1656 WBS JFM, 2009 U.S. Dist. LEXIS 56966, at *8-13 (E.D. Cal. July 2, 2009) (finding a habeas challenge to a disciplinary conviction with no attendant credit loss not moot where the petitioner submitted transcripts of prior suitability hearings at which the BPH emphasized that petitioner must demonstrate his ability to be "disciplinary-free" for a long period of time in order to be found suitable for release and where petitioner challenged both the disciplinary conviction and the underlying conduct).